Frances Britt appeals from a summary judgment entered in favor of Chrysler Corporation and Royal Motor Company.
Britt sued Chrysler and Royal for breach of contract, breach of warranty, misrepresentation, negligence, wantonness, and under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD). She alleged that her 1993 Plymouth Sundance Duster was inherently dangerous and defective because her driver's side airbag failed to deploy in one accident and improperly deployed in a second accident.
Thereafter, Chrysler and Royal filed a motion for a summary judgment, along with supporting documentation. Britt filed a brief in opposition to the motion, along with her affidavit and an affidavit from her expert, Gary McDonald. Chrysler and Royal moved to strike McDonald's affidavit on the grounds that he was not qualified to render expert opinions on airbag design, airbag function, accident reconstruction, biomechanics, or injury causation. Chrysler and Royal also asserted that McDonald's affidavit was not based upon personal knowledge.
Following a hearing, the trial court entered a summary judgment in favor of Chrysler and Royal, finding that although McDonald was an expert in automobile body repair, he was not qualified to render opinions relating to airbag design and function, seat belt design and function, accident reconstruction, biomechanics, and injury causation. The trial court also struck McDonald's affidavit, because it found that McDonald's affidavit was not based upon personal knowledge. The trial court also stated that "[e]ven considering Mr. McDonald's testimony, the *Page 181 
Court is of the opinion that [Britt] has failed to produce substantial evidence that her vehicle was defective." Britt filed a motion to alter, amend, or vacate the judgment, which the trial court denied.
Britt appealed to the Alabama Supreme Court, which transferred the appeal to this court pursuant to § 12-2-7, Ala. Code 1975. On appeal, Britt contends that the trial court erred in finding that McDonald was not qualified to render an expert opinion regarding airbag systems and in entering a summary judgment in favor of Chrysler and Royal.
A motion for a summary judgment may be granted when no genuine issue of a material fact exists and the moving party is entitled to a judgment as a matter of law. Hand v. GreenspringsStorage, 678 So.2d 1187 (Ala.Civ.App. 1996). If the moving party makes a prima facie showing that no genuine issue of a material fact exists and that it is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence demonstrating the existence of a genuine issue of a material fact. Id.
Regarding cases under the AEMLD, our supreme court has stated the following:
 "Under the AEMLD, a manufacturer has the duty to design and manufacture a product that is reasonably safe for its intended purpose and use. However, the manufacturer of a product is not an insurer against all harm that may be caused by the use of the product, and the manufacturer or designer is not obligated to produce an accident-proof or injury-proof product. Likewise, the failure of a product does not presuppose the existence of a defect. Proof of an accident and injury is not in itself sufficient to establish liability under the AEMLD; a defect in the product must be affirmatively shown. See Casrell v. Altec Industries, Inc., 335 So.2d 128 (Ala. 1976); Atkins v. American Motors Corp., 335 So.2d 134 (Ala. 1976); Sears, Roebuck Co. v. Haven Hills Farm, Inc., 395 So.2d 991 (Ala. 1981); Thompson v. Lee, 439 So.2d 113 (Ala. 1983); Brooks v. Colonial Chevrolet-Buick, Inc., 579 So.2d 1328 (Ala. 1991). In fact, we specifically held in Brooks, a case similar to the present case, that a complex braking system, such as the one at issue here, is 'precisely the type of complex and technical commodity that [requires] expert testimony to prove an alleged defect.' 579 So.2d at 1333."
Townsend v. General Motors Corp., 642 So.2d 411, 415
(Ala. 1994). The airbag system involved in this case is comprised of clock spring sensors, diagnostic units, and an airbag/inflator unit. Therefore, we hold that an airbag system is "precisely the type of complex and technical commodity that [requires] expert testimony to prove an alleged defect." Brooksv. Colonial Chevrolet-Buick, Inc., 579 So.2d 1328, 1333
(Ala. 1991).
Britt identified McDonald as her expert. McDonald owns and operates an automotive body shop, and he repaired Britt's car after her second accident. McDonald testified by deposition as follows:
 "Q. Have you ever been to the scene of the first accident?
"A. No, sir.
". . . .
 "Q. You never saw the car after the first accident?
"A. No, sir.
 "Q. You can't say how fast she was going in the first accident?
"A. No, sir.
"Q. You can't say what she hit?
"A. No, sir.
"Q. Can't say what angle she hit?
 "A. I think — the only thing I think we had — I think in her deposition — I did look over her deposition, you know, I think that the figure of forty, forty-five miles an hour comes up. That's the only speed I know, but I wasn't there. I don't know.
 "Q. You don't have any personal knowledge —
"A. No personal knowledge of it, no.
". . . .
 "Q. You don't have any personal knowledge of how fast Ms. Britt was going in the first accident?
"A. No, sir.
 "Q. And you haven't done any calculation to determine that? *Page 182 
"A. No, sir.
". . . .
 "Q. So you don't have any personal knowledge that this was a frontal collision in the first accident?
"A. No, not personal knowledge.
"Q. You just heard that?
"A. Heard that, right.
 "Q. All right. Going back to that first accident, you haven't made any calculation as to the degree or angle of the impact, right?
 "A. No. It would be impossible, not knowing — seeing the car and not knowing what it hit. I mean, you know, I —
"Q. You can't —
 "A. I could guess all day, but it would be just guesswork.
 "Q. Okay. So based upon that, you can't really say that the airbag should have gone off in that first accident because you hadn't seen the car, you hadn't seen the scene, don't know what the car hit, don't know what the angle of the impact was, and don't know what the speed was, right?
"A. No, I couldn't for sure.
 "Q. Right. And do you know what Ms. Britt — what caused her injuries in the first accident?
 "A. No, I'd be guessing, I mean, [because] it could be either the seat belt or steering column.
 "Q. Or something else. You're not an expert in —
 "A. Right. I mean I'm not a doctor, so I can't — I mean I wouldn't say.
 "Q. So you can't express an opinion as to what caused Ms. Britt's injuries in the first accident?
"A. No.
". . . .
 "Q. And if there was a problem with this airbag, you're not an expert that can say what went wrong or why it didn't go off, can you?
"A. No.
". . . .
 "Q. What's your understanding of what happened in the second accident?
 "A. The second accident? I really never looked at the accident report on the second.
 "Q. But it is your understanding that the airbag did deploy on the second?
"A. It did deploy the second time.
 "Q. And as I think you've said, it's your understanding that Ms. Britt didn't really have much injuries in the second accident?
"A. Well, from what I understood.
 "Q. So I want to sort of go through the same things. You don't know how fast Ms. Britt was going in the second accident?
"A. No, sir.
"Q. You don't know the angle of impact?
"A. No, sir.
"Q. You don't know what she hit?
"A. No, sir.
"Q. You don't know what the Delta V is?
"A. No.
 "Q. Don't offer any opinion about whether the airbag worked properly or not in the second accident?
"A. Well, it worked. I mean that's —
"Q. As far as you know, it worked fine?
"A. It did work.
 "Q. Do you have any reason to believe that the airbag didn't do what it was supposed to do in the second accident?
 "A. I would say that it did. It apparently did its job because she didn't get hurt. I mean, you know, in my opinion."
Thereafter, Britt submitted an affidavit from McDonald that directly contradicted his deposition testimony. Based on his review of the photographs of the vehicle and of Britt, his reading of Britt's deposition testimony, his reading of various Chrysler publications, his inspection of Britt's car, and his "understanding" of certain facts, McDonald opined that the seat belts, the airbag system, and the vehicle were dangerous and defective.
Our supreme court has stated that "a witness must be qualified as an expert before he can give an opinion as an expert. . . . To qualify as an expert, the witness must have such knowledge, skill, experience, or training that his opinion will be *Page 183 
considered in reason as giving the trier of fact light upon the question to be determined." Townsend, 642 So.2d at 423 (citations omitted). Furthermore, a determination of whether a witness qualifies as an expert is within the sound discretion of the trial court and that determination will be reversed only if it is found to be palpably wrong. Weeks v. Danford,608 So.2d 387 (Ala. 1992).
McDonald's deposition testimony reflects that he was not qualified to render an opinion regarding the airbag system. McDonald did not offer any explanation in his affidavit how, after his deposition testimony, he acquired the knowledge, skill, training, or experience to render an opinion that the airbag system was dangerous and defective. Moreover, Rule 56(e), Ala. R. Civ. P., requires, in pertinent part, that "[s]upporting and opposing affidavits shall be made on personal knowledge." After reviewing McDonald's affidavit, we conclude that McDonald's affidavit failed to comply with the personal knowledge requirement of Rule 56(e).
Based upon our review of the record, we cannot conclude that the trial court's determination — that McDonald was not qualified to render expert opinions regarding airbag design and function, seat belt design and function, accident reconstruction, biomechanics, and injury causation — was palpably wrong. Therefore, Britt failed to produce expert testimony to prove the alleged defect in the airbag system. Accordingly, we conclude that Chrysler and Royal were entitled to a judgment as a matter of law. Townsend, supra.
The judgment of the trial court is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala. Code 1975.
AFFIRMED.
All the Judges concur.