WISE, Justice.
Younus Ismail, M.D., petitions this Court for a writ of mandamus directing the trial court to vacate its February 11, 2011, order denying his motion for a summary judgment[1] as to claims the plaintiffs, Randy Paradise and Joy Paradise, filed against him and to enter a summary judgment in his favor. We grant the petition and issue the writ.

Facts and Procedural History

On May 20, 2006, Randy Paradise was treated in the emergency room at Highlands Medical Center (“Highlands”). A chest X-ray was ordered as part of his treatment. While he was in the radiology department, Randy fell and sustained various injuries.
On May 16, 2008, the plaintiffs sued Highlands, alleging negligence and wantonness, pursuant to the Alabama Medical Liability Act, Ala.Code 1975, § 6-5-480 et seq. and § 6-5-540 et seq., in causing the injuries to Randy on May 20, 2006. They also included 17 fictitiously named defendants in their complaint and alleged that *403 those defendants were “liable for their negligence and wantonness in causing injury to Randy Paradise.” The plaintiffs also served their first set of interrogatories on Highlands with the summons- and the complaint.
On July 3, 2008, Highlands filed its initial response to the plaintiffs’ first set of interrogatories. Interrogatory # 12 requested that Highlands
“[ijdentify each person who was scheduled to be on duty in the Emergency Room Department at Highlands Medical Center on May 20, 2006 [and] state where each of those persons [was] at the time of Mr. Paradise’s fall.”
Highlands responded to this interrogatory as follows:
“[Highlands] objects to this interrogatory as it is so broad that it seeks information that is not discoverable in this action pursuant to § 6-5-551 of the Code of Alabama. [Highlands] does not object to identifying persons involved in the treatment and care of plaintiff.”
(Emphasis added.)
On May 3, 2010, the plaintiffs filed a motion to compel Highlands to provide complete responses to their first set of interrogatories. They attached to their motion letters to counsel for Highlands dated November 17, 2009, and February 15, 2010, in which they requested complete responses to their discovery requests. The trial court granted the plaintiffs’ motion to compel on May 7, 2010. On July 6, 2010, when Highlands had not responded to their discovery requests, the plaintiffs filed a motion for sanctions.
On July 12, 2010, Highlands filed a response to the plaintiffs’ motion for sanctions. It also filed a supplemental response to the plaintiffs’ first set of interrogatories. With regard to interrogatory # 12, it stated:
“[Highlands] maintains its previously filed objection to this interrogatory as it is so broad that it seeks information that is not discoverable in this action pursuant to § 6-5-551 of the Code of Alabama. [Highlands] does not object to identifying persons involved in the treatment and care of [Randy Paradise]. According to the records the following were involved with the treatment and care of [Randy Paradise]: Shelby Hutchins, RN, Nathan Brown, RN, Carolyn Rousseau, RN, Carrie Atwell, RTT, medics to Highlands Medical Center were Michael Crane, Paramedic and Greg Gilliam, Basic EMT and medics from Highlands Medical Center to Huntsville were David Kennamer, Paramedic and Kristi Burns, intermediate EMT 2, Dr. Younus Ismail; Dr. John Reichle read the chest x-ray.”
On July 29, 2010, the plaintiffs filed an amended complaint in which they named Dr. Ismail as a defendant, substituting him for a fictitiously named defendant in the original complaint. They also alleged that “Dr. Younus Ismail has recently been disclosed by Highlands Medical Center as the emergency room physician in charge and control of Randy Paradise’s treatment on May 20, 2006.”
On September 3, 2010, Dr. Ismail filed a motion to dismiss, arguing that the plaintiffs’ amended complaint was barred by § 6-5-482, Ala.Code 1975, the two-year statute of limitations applicable to medical-malpractice cases. With regard to the plaintiffs’ fictitious-party pleading, he asserted that that the plaintiffs did not set forth a cause of action against him, did not adequately identify him as a fictitiously named defendant, and did not exercise due diligence in attempting to discover his identity both before and after filing the complaint.
*404 On December 8, 2010, the plaintiffs filed a motion opposing Dr. Ismail’s motion to dismiss. In that motion, they alleged:
“Plaintiffs filed suit in this matter on May 16, 2008. Pursuant to Rule 9, Alabama Rules of Civil Procedure, Plaintiffs alleged numerous fictitious parties in their original complaint. Plaintiffs likewise filed numerous discovery requests with their original complaint on May 16, 2008. Included in Plaintiffs’ discovery requests were requests regarding the disclosure of the physician who was responsible for Mr. Paradise’s treatment on May 20, 2006.
“... Plaintiffs did request and receive a copy of Highlands Medical Center medical records, prior to the expiration of two years. However, both Dr. Joe Cromeans and Dr. Younus Ismail are identified as treating physicians in said records.... Therefore, Plaintiffs’ discovery requests were directed to Highlands Medical Center requesting the correct identity of the physician who was responsible for the treatment of Randy Paradise.
“... Defendant, Highlands Medical Center, was served with said discovery requests on May 22, 2008. Defendant, Highlands Medical Center, failed to answer Plaintiffs’ discovery requests. Therefore, after numerous correspondence and calls regarding said discovery, Plaintiffs filed a Motion to Compel said discovery responses on May 3, 2010. An Order granting Plaintiffs’ Motion was entered on May [7], 2010.
“... Defendant, Highlands Medical Center, failed to comply with the Court’s May [7], 2010 Order. Plaintiffs then filed a Motion for Sanctions against Defendant Highlands Medical Center on July 6, 2010. The disclosure of Dr. Younus Ismail did not occur until Defendant, Highlands Medical Center, filed answers to Plaintiffs’ Interrogatories on July 12, 2010....
“... Within 17 days (July 29, 2010) of the disclosure of Dr. Ismail by Highlands Medical Center, Plaintiffs filed their Amended Complaint naming as an additional defendant, Dr. Younus Ismail.”
The plaintiffs also alleged that, “[i]n an effort to avoid Rule 11[, Ala. R. Civ. P.,] sanctions, [their] counsel diligently pursued the disclosure of the correct medical physician and did not file an amendment without this disclosure.”
The trial court conducted a hearing on Dr. Ismail’s motion on February 7, 2011, and on February 11, 2011, it denied the motion. This petition followed.

Standard, of Review

“ ‘ “[M]andamus is a drastic and extraordinary writ that will be issued only when there is: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” Ex parte Horton, 711 So.2d 979, 983 (Ala.1998). “Subject to certain narrow exceptions ..., the denial of a motion to dismiss or a motion for a summary judgment is not reviewable by petition for writ of mandamus.” Ex parte Liberty Nat’l Life Ins. Co., 825 So.2d 758, 761 (Ala.2002) (citing Ex parte Jackson, 780 So.2d 681, 684 (Ala.2000)).’
“Ex parte Alloy Wheels Int’l, Ltd., 882 So.2d 819, 821-22 (Ala.2003). One of the ‘narrow exceptions’ to the general rule that a ruling on a summary-judgment motion is not reviewable by a petition for a writ of mandamus is the denial of a summary-judgment motion when ‘the undisputed evidence shows that the *405 plaintiff failed to act with due diligence in identifying the fictitiously named defendant as the party the plaintiff intended to sue.’ Ex parte Snow, 764 So.2d 5B1, 537 (Ala.1999). In reviewing the grant or denial of a summary-judgment motion,
“ ‘ “we must determine whether there was a genuine issue of material fact and, if not, whether the mov-ant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmov-ant and resolve all reasonable doubts against the movant.”
“ ‘Brewer v. Woodall, 608 So.2d 370, 372 (Ala.1992).
“ ‘ “A summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The party moving for the summary judgment, here [Chemical Lime], has the burden of establishing a prima facie showing that there is no genuine issue of material fact. Berner v. Caldwell, 543 So.2d 686 (Ala.1989). If the moving party makes such a showing, then the burden shifts to the nonmoving party to rebut that showing by presenting substantial evidence creating a genuine issue of material fact. Substantial evidence is ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).”
“ ‘Young v. La Quinta Inns, Inc., 682 So.2d 402, 403 (Ala.1996).’
“Ex parte Alloy Wheels, 882 So.2d at 822.”
Ex parte Chemical Lime of Alabama, Inc., 916 So.2d 594, 596-97 (Ala.2005).

Discussion

Dr. Ismail argues that the trial court should have entered a summary judgment in his favor on the ground that the plaintiffs’ claims against him were barred by the two-year statute of limitations for medical-malpractice actions set forth in § 6-5-482, Ala.Code 1975.[2] He bases this argument on his contention that the plaintiffs did not exercise due diligence to discover his identity as a proper party to be sued and did not substitute him for a fictitiously named defendant in this case until after the limitations period had expired.[3]
“This Court has previously stated that Rule 9(h) and Rule 15(c)(4), Ala. R. Civ. *406 P., ‘ “allow a plaintiff to avoid the bar of a statute of limitations by fictitiously naming defendants for which actual parties can later be substituted.” ’ Ex parte Chemical Lime of Alabama, Inc., 916 So.2d 594, 597 (Ala.2005) (quoting Fulmer v. Clark Equip. Co., 654 So.2d 45, 46 (Ala.1995)). Rule 9(h), Ala. R. Civ. P., provides:
“ ‘When a party is ignorant of the name of an opposing party and so alleges in the party’s pleading, the opposing party may be designated by any name, and when that party’s true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name.’
“Rule 15(c)(4), Ala. R. Civ. P., provides that ‘[a]n amendment of a pleading relates back to the date of the original pleading when ... relation back is permitted by principles applicable to fictitious party practice pursuant to Rule 9(h), Ala. R. Civ. P.’
“In order to invoke the relation-back principle of Rule 15(c) in regard to fictitious-party practice under Rule 9(h), a plaintiff
“ ‘(1) must state a cause of action against the party named fictitiously in the body of the original complaint and (2) must be ignorant of the identity of the fictitiously named party, in the sense of having no knowledge at the time of the filing that the later-named party was in fact the party intended to be sued.’
“Crawford v. Sundback, 678 So.2d 1057, 1059 (Ala.1996).
“ ‘A plaintiff is ignorant of the identity of a fictitiously named defendant when, after exercising due diligence to ascertain the identity of the party intended to be sued, he lacks knowledge at the time of the filing of the complaint of facts indicating to him that the substituted party was the party intended to be sued. Likewise, to invoke the relation-back principle of Rule 15(c), a plaintiff, after filing suit, must proceed in a reasonably diligent manner to determine the true identity of a fictitiously named defendant and to amend his complaint accordingly.’
“Ex parte FMC Corp., 599 So.2d 592, 593-94 (Ala.1992) (emphasis added). Thus, it is incumbent upon the plaintiff to exercise due diligence to determine the true identity of defendants both before and after filing the original complaint. It is also incumbent upon the plaintiff to ‘substitute the named defendant for the fictitious party within a reasonable time after determining the defendant’s true identity,’ and ‘ “the same policy considerations which require a plaintiff to amend his complaint within a reasonable time after learning the defendant’s true identity also require the plaintiff to proceed in a reasonably diligent manner in determining the true identity of the defendant.” ’ Crawford 678 So.2d at 1060 (quoting Kinard v. C.A. Kelly & Co., 468 So.2d 133, 135 (Ala.1985) (emphasis added)).”
Ex parte Hensel Phelps Constr. Co., 7 So.3d 999, 1002-03 (Ala.2008) (some emphasis added).
“The purpose of Rule 9(h) is to toll the applicable statute of limitations when the plaintiff has diligently pursued the identity of, but has been unable to identify, certain defendants. The fictitious name serves as a placeholder for the defendant, and Rule 15(c) allows the claim against the substituted defendant to relate back to the date of the original complaint. Toomey v. Foxboro Co., 528 So.2d 302 (Ala.1988).
“ ‘Rule 9(h)[, Ala. R. Civ. P.,] is not intended to give plaintiffs additional *407 time beyond the statutorily prescribed period within which to formulate causes of action. Instead, the principal reason for the rule is to toll the statute of limitations in emergency cases where [the] plaintiff knows he has been injured and has a cause of action against some person or entity, but has been unable to ascertain through due diligence the name of that responsible person or entity.’
“Columbia Eng'g Int’l, Ltd. v. Espey, 429 So.2d 955, 959 (Ala.1983) (citing Browning v. City of Gadsden, 359 So.2d 361 (Ala.1978)).”
Weber v. Freeman, 3 So.3d 825, 832 (Ala.2008).
The cause of action in this case accrued on May 20, 2006,[4] and the plaintiffs filed their complaint on May 16, 2008, four days before the two-year limitations period was to expire. Dr. Ismail was not named as a defendant in the original complaint. Instead, several defendants were fictitiously named in the original complaint, and Dr. Ismail was substituted for one of those fictitiously named defendants on July 29, 2010, well after the two-year limitations period had expired. Therefore, the question before this Court is whether the trial court exceeded its discretion in denying Dr. Ismail’s motion for a summary judgment, thereby implicitly finding that the plaintiffs’ substitution in the amended complaint filed on July 29, 2010, of Dr. Ismail for one of the fictitiously named defendants related back to the filing of the original complaint on May 16, 2008.
Dr. Ismail acknowledges that the plaintiffs’ action would not be barred if they had properly used fictitious-party pleading pursuant to Rules 9(h) and 15(c), Ala. R. Civ. P. However, he argues that, even assuming that the plaintiffs stated a cause of action against him in their original complaint and that they adequately identified him in their fictitious-party pleading, they did not exercise due diligence in identifying him as a party to be sued and in substituting him for a fictitiously named defendant. We agree.
Dr. Ismail points out that it is undisputed that the plaintiffs had copies of Randy Paradise’s medical records, which identified Dr. Ismail as a treating physician, before they filed their original complaint. A discharge report dated May 20, 2006, which is included in the documents before us, contains the following notations: “Adm Physician: CROMEANS, JOE” and “Atn Physician: ISMAIL, YOUNUS.” Therefore, Dr. Ismail asserts that the plaintiffs knew the identity of the two treating physicians from the medical records but did not exercise due diligence in determining the significance of that information. He also stresses that, although the plaintiffs filed a set of interrogatories directed to Highlands with their original complaint, they waited almost two years before seeking to compel complete responses to those interrogatories.
The plaintiffs admit that they requested medical records from Highlands in June 2006, shortly after Randy Paradise was injured, and that they obtained those records sometime before they filed the original complaint. They also admit that those records listed Dr. Ismail as one of two treating physicians. Therefore, the medical records put the plaintiffs on notice that Dr. Ismail may have treated Randy Paradise in the emergency room on May 20, 2006. See Ex parte Snow, 764 So.2d 531, 537 (Ala.1999) (finding that Dr. Snow’s let *408 ter put the plaintiffs on notice, long before the limitations period expired, that the patient was experiencing certain medical conditions following the medical procedure); Miller v. Norwood Clinic, Inc., 577 So.2d 860 (Ala.1991) (finding that the plaintiff had knowledge of the names and the roles the doctors played by virtue of medical records that were made available shortly after the patient’s death); Ex parte Klemawesch, 549 So.2d 62 (Ala.1989) (finding that the plaintiff had been on notice of an unidentified signature below a progress note on a medical record). However, there is not any indication that the plaintiffs here made any effort, before filing their original complaint, to determine what involvement, if any, Dr. Ismail had in treating Randy Paradise in the emergency room. See Harmon v. Blackwood, 623 So.2d 726, 727 (Ala.1993) (finding that “the plaintiff failed to meet the criteria for invoking the relation-back principles of Rule 9(h) and Rule 15(c)” because, even though he knew the name of the physician and his involvement in treating his son before the limitations period expired, he did not investigate and evaluate his claim to determine who was responsible and to ascertain whether there was evidence of medical malpractice); Ex parte Snow, 764 So.2d at 537 (holding that medical records put the plaintiffs on notice as to certain medical conditions before the limitations period expired, that it was incumbent on the plaintiffs to learn the significance of that information, and that the plaintiffs “failed to diligently investigate and evaluate their claim before the limitations period expired”); Weber, 3 So.3d at 833 (holding that, because “the plaintiff knew of the identity of Dr. Weber and The Radiology Group ... before she filed her action,” “it was incumbent upon her, before the statute of limitations on her claim expired, to investigate and evaluate the claim to determine who was responsible for [her son’s] death”).
The plaintiffs filed their first set of interrogatories directed to Highlands with the summons and the complaint on May 16, 2008, and they state that the interrogatories were served on Highlands on May 22, 2008. Interrogatory # 12 sought the identity of each person who was scheduled to be on duty in the emergency room on May 20, 2006, the date of Randy Paradise’s injury, and the location of each of those persons at the time Randy Paradise fell. On July 3, 2008, Highlands responded that the interrogatory was too broad and that it sought information that was not discoverable but added that it did “not object to identifying persons involved in the treatment and care of [Randy Paradise].” In spite of Highlands’ offer, there is no indication that the plaintiffs made any attempt to have Highlands identify the people involved in the treatment and care of Randy Paradise after they received Highlands’ response to interrogatory # 12. Instead, it appears that counsel waited approximately 16 months, until November 17, 2009, to send a letter to counsel for Highlands requesting complete responses to its discovery. Compare Bowen v. Cummings, 517 So.2d 617, 618 (Ala.1987) (holding that “Rule 9(h) was not meant to allow a party to sit back for almost two years and make only one attempt at learning the defendant’s name, and then, failing, simply to list fictitious defendants”). Counsel for the plaintiffs sent a second letter regarding discovery to counsel for Highlands on February 15, 2010. Finally, on May 3, 2010, the plaintiffs filed a motion to compel Highlands to provide complete responses to their discovery requests. Highlands responded with Dr. Ismail’s name on July 12, 2010, and the plaintiffs amended them complaint to add Dr. Ismail as a defendant on July 29, 2010.
*409 “ ‘The recalcitrant plaintiff cannot ... use the [relation-back] rule to gain what might otherwise amount to an open-ended statute of limitations.’ Kinard [v. C.A. Kelly & Co.], 468 So.2d [133] at 135 [ (Ala.1985) ]....
“In short, ‘[factitious party practice ... was not intended for use whenever it is merely inconvenient for the plaintiff to learn the name of the true defendant.’ Bowen [v. Cummings ], 517 So.2d [617] at 618 [ (Ala.1987) ].”
Ex parte Hensel Phelps Constr. Co., 7 So.3d at 1004.
In their response to Dr. Ismail’s motion before the trial court, the plaintiffs argued that they filed discovery on May 16, 2008, requesting the disclosure of the emergency-room physician responsible for Randy Paradise’s treatment and that the name of that physician was not disclosed to them until July 12, 2010. They also argued that, “[i]n an effort to avoid Rule 11[, Ala. R. Civ. P.,] sanctions, [their] counsel diligently pursued the disclosure of the correct medical physician and did not file an amendment without this disclosure.” In their response to the petition before this Court, the plaintiffs also assert:
“In the present case, Paradise immediately sought discovery of the proper emergency room physician. Counsel is unaware of any other way to make this determination other than discovery requests and/or depositions. Counsel diligently pursued both including filing a motion to compel and a motion for sanctions with the trial court.
“Although there may have possibly been other ways Paradise could have learned whether Ismail was the proper defendant, Paradise would request this Court not hold as a matter of law that Paradise’s actions lacked due diligence- Paradise should not be penalized due to the fact Highland’s counsel was unable to respond to Paradise’s discovery requests in a timely manner.”
The materials before us simply do not support the plaintiffs’ arguments. The plaintiffs requested and obtained Randy Paradise’s medical records from Highlands before filing their original complaint, and those records revealed the names of two treating physicians, one of whom was Dr. Ismail. Nonetheless, the plaintiffs did not present any evidence to show that they made any attempt to ascertain the extent of Dr. Ismail’s participation before they filed the original complaint. See Harmon, supra; Ex parte Snow, supra; Weber, supra.
“[W]hen a plaintiff knows the name of a physician and the involvement of that physician in the treatment of the patient, it is incumbent upon the plaintiff, before the running of the statutory period, to investigate and to evaluate his claim to determine who is responsible for the injury and to ascertain whether there is evidence of malpractice.”
Harmon, 623 So.2d at 727. Also, although they filed and served discovery requests with the summons and the complaint in May 2008, the plaintiffs do not appear to have made any further efforts to determine who treated Randy Paradise in the emergency room, even though Highlands specifically stated that it did not object to providing such information, until plaintiffs’ counsel sent letters in late 2009 and early 2010[5] and until they filed a motion to compel on May 3, 2010, nearly two years after the original complaint and interrogatories were filed. See Ex parte Hensel *410 Phelps Constr. Co., 7 So.3d at 1003-04 (noting that, “[f]or all that appears from the materials before us and from the briefs of the parties, during this 23 months [between the filing of the original complaint and the filing of the amended complaint naming Hensel Phelps as a defendant, the plaintiff] conducted little, if any, informal discovery in an effort to determine the identity of Hensel Phelps as one of the fictitiously named defendants” and did not conduct any formal discovery).
For the reasons set forth herein, the undisputed evidence in this case clearly demonstrates that the plaintiffs did not exercise due diligence, either before or after filing their complaint, in identifying Dr. Ismail as the proper party to be sued and in naming him in place of a fictitiously named defendant. See Ex parte Hensel Phelps Constr. Co., 7 So.3d at 1003 (holding that “it is incumbent upon the plaintiff to exercise due diligence to determine the true identity of defendant both before and after filing the original complaint”). Therefore, the relation-back doctrine does not apply with regard to the plaintiffs’ claims against Dr. Ismail. Dr. Ismail has shown that he has a clear legal right to mandamus relief, that the trial court exceeded its discretion in denying his motion for a summary judgment, and that he is entitled to a summary judgment.
“The facts of this case make our decision a difficult one. However, medical-malpractice cases, by their very nature, virtually always involve patients in difficult situations. As we stated in Marsh v. Wenzel [, 732 So.2d 985 (Ala.1998) ]:
“ ‘We are not oblivious to the reality of these hard facts. But we are constrained by the time limits imposed by the legislature on the commencement of actions. Counsel’s obligation to act in good faith and to act consistently with high ethical standards requires that counsel strike a balance between, on the one hand, the obligation to present, within the period of limitations, the full range of claims essential to protect the interests of a plaintiff, and, on the other hand, the competing obligation to refrain from bringing groundless or frivolous claims. Whether it would be wise to create an exception to the statute of limitations when a defendant has not been joined on account of counsel’s good faith efforts to satisfy these competing obligations is not properly a question for this Court. We recognize that because we are declining to engage in a legislative function, a potentially liable defendant might have a valid statute-of-limitations defense under such circumstances. But this dilemma is as old as statutes of limitations. However, second-guessing the wisdom of any choice between these competing obligations should be undertaken only with a high degree of deference and great caution, lest we promote an unhealthy public policy of pressuring a plaintiff to assert claims that ought not be pursued.’
“732 So.2d at 990.”
Ex parte Snow, 764 So.2d at 537-38.

Conclusion

Dr. Ismail’s petition for a writ of mandamus is granted. The trial court is directed to vacate its order denying Dr. Ismail’s motion and to enter a summary judgment for Dr. Ismail.
PETITION GRANTED; WRIT ISSUED.
WOODALL, STUART, and PARKER, JJ., concur.
SHAW, J., concurs in part and concurs in the result.

. Dr. Ismail styled his motion as a motion to dismiss. However, the trial court had before it materials outside the pleadings, and it did not expressly decline to consider those materials in making its ruling. Therefore, the motion to dismiss was converted into a motion for a summary judgment.
"When materials outside the pleadings accompany a motion to dismiss, the trial court is ‘not bound to limit itself to the pleadings. Papastefan v. B & L Constr. Co., 356 So.2d 158, 160 (Ala.1978). [W]here matters outside the pleadings are considered on a motion to dismiss, the motion is converted into a motion for summary judgment ... regardless of its denomination
and treatment by the trial court.’ Boles v. Blackstock, 484 So.2d 1077, 1079 (Ala.1986). Indeed, unless the trial court expressly declines to consider the extraneous material, its conclusions may be construed to include the extraneous material. Cf. Ex parte Liberty Nat'l Life Ins. Co., 825 So.2d 758, 763 n. 1 (Ala.2002) (trial court's express refusal to consider extraneous material constituted an exclusion).”
Phillips v. AmSouth Bank, 833 So.2d 29, 31 (Ala.2002). See also Ex parte Comical Lime of Alabama, Inc., 916 So.2d 594 (Ala.2005); Crowl v. Kayo Oil Co., 848 So.2d 930 (Ala.2002).

. Section 6-5-482(a), Ala.Code 1975, provides, in pertinent part:
"All actions against physicians ... for liability, error, mistake, or failure to cure, whether based on contract or tort, must be commenced within two years next after the act, or omission, or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided further, that in no event may the action be commenced more than four years after such act; except, that an error, mistake, act, omission, or failure to cure giving rise to a claim which occurred before September 23, 1975, shall not in any event be barred until the expiration of one year from such date.”

. Because of our disposition of this issue, we do not address the remaining arguments Dr. Ismail raises in his brief to this Court.

. "A cause of action 'accrues' under § 6-5-482 when the act complained of results in legal injury to the plaintiff.” Mobile Infinnary v. Delchamps, 642 So.2d 954, 958 (Ala.1994).

. Counsel for the plaintiffs refers generally to telephone conversations with counsel for Highlands made in the interim. However, he does not provide any details about the timing or frequency of those conversations.